IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

--------------------------------------------------------x

JOSEPH ARTHUR                     :
                                       :
      Plaintiff,               :
                                         :

v.                                     :       Case No.   3:22-cv-45          
                                         :
                                       :       **COMPLAINT**

LOS ANGELES TIMES         :
      COMMUNICATIONS, LLC  :       **JURY TRIAL DEMANDED**
      t/a The LA Times        :
                                         :
      Defendant.             :

--------------------------------------------------------x

Plaintiff, Joseph Arthur ("Plaintiff" or "Arthur"), by counsel, pursuant to Rule 3 of the Federal Rules of Civil Procedure, files the following Complaint against Defendant, Los Angeles Times Communications, LLC. t/a The LA Times ("LA Times").

Plaintiff seeks (a) compensatory damages and punitive damages in the sum of **$25,000,000.00**, (b) prejudgment interest on the principal sum awarded by the Jury from August 10, 2021 to the date Judgment is entered, and (c) court costs – arising out of the Defendants' defamation and false light invasion of privacy.

## I.  STATEMENT OF MATERIAL FACTS

1.    On August 10, 2021, LA Times published an online article, entitled "**He was a celebrated singer-songwriter with famous fans.  Then he started posting about the vaccine**".  [https://www.latimes.com/entertainment-arts/music/story/2021-08-10/joseph-arthur-vaccine-anti-vaxxer-covid (the "Article")].  In addition to LA Times' online subscribers, LA Times and its agents republished the Article to well over

3,807,800 people on Twitter. [https://twitter.com/latimes/status/1425106667339911169;

https://twitter.com/latimes/status/1425186335732600832;

https://twitter.com/latimes/status/1425128596553748481;

https://twitter.com/LilEdit/status/1425090191224680456 ("Joseph Arthur: The path from

acclaimed artist to anti-vaxxer – Los Angeles Times")].

2.     The gist of the Article is that Arthur is an "anti-vaxxer"; that he is

mentally unstable; that he spreads disinformation, promotes dangerous drugs and

"debunked vaccine conspiracy theor[ies]"; and that he has made fraudulent statements

about the COVID-19 vaccine on his Instagram, YouTube and Facebook accounts.  The

Article falsely implies that Arthur's "questioning" of the science behind the experimental

COVID-19 vaccines and the motives of the Government and pharmaceutical companies

"cost him", and caused the loss of certain music industry relationships.

3.     By prominently inserting a photograph in the Article of Arthur holding his

newborn baby, LA Times intended and endorsed the false and defamatory implication,

and implied that Arthur was endangering his child, his family, indeed all of society.  This

is an unconscionable misrepresentation.

4.     The Article impugned Arthur's professional integrity and exposed him to

hatred, contempt, ridicule, or obloquy as someone who was against all vaccines.

Publication caused him to be shunned and avoided.  The Article severely injured Arthur

in his occupation as a musician, leading directly to the cancelation of multiple gigs.

5.     The Article was instantly understood to convey a defamatory meaning,

including that Arthur is an anti-vaxxer, spreading disinformation.

6.      LA Times knew that its statements were false.  Prior to publication of the Article, Arthur texted the Times reporter, Randall Roberts ("Roberts"), and expressly advised him that Arthur was **_not_** anti-vaccines:



Arthur's prescient statements about the COVID-19 vaccines were 100% factually accurate.  LA Times intentionally ignored Arthur's notice that its statements were false and defamatory.  Prior to publication, Roberts had a serious doubt as to the veracity of the Article and was "torn" about publishing the Article and painting Arthur in a false light.  [*See, e.g.,* https://twitter.com/LilEdit/status/1425125479036559360 ("I'm still torn about whether this was a good idea or not")].  However, he was overruled by his editor, and the LA Times published the false statements without caveat knowing that the statements and implications were untrue.

7.      In this case, Arthur seeks presumed damages, actual damages, special damages and punitive damages as a result of the LA Times' false statements and defamatory implications.

## II.  <u>PARTIES</u>

8.      Joe Arthur is a citizen of Arizona.  He lives in Tempe.  He is a private individual.  He is an artist/singer/songwriter. [http://josepharthur.com/].

9.      Defendant, LA Times, is a California limited liability company, with a principal place of business in El Segundo, California.  NantMedia Holding, LLC is the sole member of the LA Times.  None of the LA Times' members are citizens of Arizona.  The LA Times sells print and online newspapers in Arizona and elsewhere, and otherwise engages in substantial, continuous and systematic business throughout the United States.  In addition to its massive print and digital footprint, the LA Times uses multiple social media accounts to solicit and conduct business.  The statements at issue in this case, identified above, were published and read in Virginia and Arizona, where Arthur suffered special damages and actual injury. *See, e.g., Keeton v. Hustler Magazine, Inc.*, 465 U.S.

770, 776 (1984) ("[f]alse statements of fact harm both the subject of the falsehood **and** the readers of the statement … The tort of libel is generally held to occur wherever the offending material is circulated. Restatement (Second) of Torts § 577A, Comment a (1977).

### III.  JURISDICTION AND VENUE

10.     The United States District Court for the Western District of Virginia has subject matter jurisdiction over this action pursuant to Title 28 U.S.C. § 1332 (Diversity). The parties are citizens of different States and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

11.     The LA Times is at home in Virginia, and is subject to the Court's general and specific personal jurisdiction in this case.

12.     Venue is proper pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2).

### COUNT I – DEFAMATION

13.     Plaintiff restates paragraphs 1 through 12 of this Complaint, and incorporates them herein by reference.

14.     LA Times made, published and republished false factual statements of or concerning Arthur.  LA Times published the false statements without privilege of any kind.

15.     LA Times' statements are materially false.  Arthur is not an anti-vaxxer or against vaccines.  He is not mentally unstable.  He does not spread misinformation or promote dangerous drugs or "debunked vaccine conspiracy theor[ies]".  He has not made fraudulent statements about the COVID-19 vaccines on his Instagram, YouTube and Facebook accounts.  Arthur's views have not endangered his child or his family or

anyone else. Comparing LA Times' false statements to the truth, it is beyond peradventure that LA Times' and implications are materially false. *Bustos v. A&E Networks*, 646 F.3d 762, 767 (10th Cir. 2011) (Gorsuch, J.) ("Comparing the challenged defamatory statement (membership in the Aryan Brotherhood) to the truth (conspiring with and aiding and abetting the Aryan Brotherhood), we cannot see how any juror could find the difference to be a material one—that is, likely to cause a reasonable member of the general public to think significantly less favorably of Mr. Bustos").

16.     LA Times' false statements constitute express defamation or defamation by implication. The statements accuse and impute to Arthur an unfitness to perform the duties of an office or employment for profit. The LA Times' statements expose Arthur to the hazard of losing business, and prejudice him in his profession. The LA Times' false statements were neither fair nor accurate. The LA Times carefully chose its words and purposefully misrepresented facts, including Arthur's position on vaccines. In the Article, LA Times juxtaposed a series of facts so as to imply a defamatory connection between them. The LA Times also chose to ignore and omit Arthur's notice which clearly stated his position regarding the COVID-19 "vaccines".

17.     By publishing the statements on the Internet *and* republishing via social media, LA Times knew or should have known that the false statements would be republished over and over by third-parties to Arthur's detriment. Republication by LA Times's followers, subscribers, readers, other media outlets, and by users of Twitter was the natural and probable consequence of LA Times' actions and was actually and/or presumptively authorized by LA Times. In addition to its original publications, LA

Times is liable for the republications of the false and defamatory statements by third-parties under the republication rule.

18.     LA Times' false and defamatory statements jeopardized Arthur's safety and harmed Arthur and his reputation, causing presumed damages, actual damages, special damages and pecuniary loss.  Publication of the Article had an immediate effect on Arthur's business and income as the following email demonstrates.  The Article had a deleterious effect on readers, including those who did business with Arthur, *e.g.*:

> From: **Daniel Brindley** <daniel@unionstage.com>
> Date: Tue, Aug 17, 2021 at 1:44 PM
> Subject: Re: Joseph Arthur @ Jammin Java 8/21
> To: Joseph Arthur <josepharthur777@gmail.com>
> CC: Luke Brindley <luke@unionstage.com>, Jonathan Brindley <jonathan@unionstage.com>, Lana Mahmoud <lana@unionstage.com>
>
> Joseph - sorry for such late notice here. I was actually out the last week for some surgery so I have gotten quite behind.
>
> - We have been getting a lot of pushback, emails, and such from both staff and customers after that article came out about vaccine and mask stuff.
>
> - At this point, we are going to need to need to push to reschedule your show to a later date. It's not what we *want* to do but it's what we have to do. As a venue right now, we can't do anything that would make staff or patrons feel unsafe as so much of the game we are playing right now is about "peace of mind".
>
> - I hope you understand.
>
> - I am available to discuss late this afternoon or tomorrow if need be: 703.899.8750

In addition to the pain, emotional suffering, insult, embarrassment, humiliation, and injury to reputation, LA Times' publication caused career damage, loss of future earnings, and impaired and diminished Arthur's earning capacity.

19.     LA Times lacked reasonable grounds for a belief in the truth of its statements, and acted negligently in failing to determine the true facts.

20.     LA Times published the false and defamatory statements with actual or constructive knowledge that they were false or with reckless disregard for whether they were false.  LA Times acted with actual malice and reckless disregard for the truth:

a.     LA Times knew its statements about Arthur were false.  Arthur explained his position in detail to LA Times prior to publication.  In spite of its actual knowledge and Randall's serious doubts as to the veracity of the story, LA Times deliberately excluded and misrepresented Arthur's position and falsely portrayed him as a radical anti-vaxxer, who spread disinformation and otherwise engaged in extreme behavior.

b.     LA Times abandoned all journalistic standards and integrity, including its own standards and code of ethics, in writing, editing, and publishing the false narrative that Arthur was against vaccines.  The LA Times did not seek the truth or report it.  They betrayed the truth to sensationalize the news for self-glory, profit and politics.  Rather than minimize harm to Arthur, LA Times set out to inflict maximum pain and suffering on Arthur in order to harm Arthur's reputation and belittle his concerns about the COVID-19 vaccines.

c.     LA Times purposefully evaded the truth by publishing false statements and implications after Arthur notified the LA Times that it representations and implications were false and defamatory.

21.     As a direct result of LA Times' defamation, Arthur suffered presumed damages, actual damages and special damages, including, but not limited to, insult, pain, embarrassment, humiliation, mental anguish (past and future), injury to his reputation (past and future), lost future earnings and diminished earning capacity, costs and other

out-of-pocket expenses, in the sum of $25,000,000.00 or such greater amount as is determined by the Jury.

<strong>COUNT II – <u>FALSE LIGHT INVASION OF PRIVACY</u></strong>

22.     Plaintiff restates paragraphs 1 through 21 of this Complaint, and incorporates them herein by reference.

23.     By publishing the false statements online and via social media to millions of subscribers, viewers, users and followers, and by causing the republication of the statements by third-parties, LA Times generated substantial publicity about the false statements and defamatory implications of or concerning Arthur. LA Times' statements and implications constitute a major misrepresentation of Arthur's character, history and beliefs. LA Times ascribed to Arthur actions and associations that did not exist and beliefs Arthur has never held. By labelling and stigmatizing Arthur as an "antivaxxer", LA Times painted Arthur in a false light that would be offensive to any reasonable person. Given the universal condemnation of "anti-vaxxers", the association published or implied would be objectionable to the ordinary reasonable person under the circumstances.

24.     LA Times had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Arthur would be placed by the false statements and defamatory implications. As a result of LA Times' false statements and defamatory implications, Arthur was universally condemned on Twitter and by colleagues and music venues.

25.     LA Times' actions constitute a false light invasion of Arthur's privacy.

26.     As a direct result of LA Times' false light invasion of privacy, Arthur suffered presumed damages, actual damages and special damages, including, but not limited to, insult, pain, embarrassment, humiliation, mental anguish (past and future), injury to his reputation (past and future), lost future earnings and diminished earning capacity, attorney's fees, court costs and other out-of-pocket expenses, in the sum of $25,000,000.00 or such greater amount as is determined by the Jury.

Plaintiff alleges the foregoing based upon personal knowledge, public statements of others, and records in his possession.  Plaintiff believes that substantial additional evidentiary support, which is in the exclusive possession of LA Times and its agents and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

Plaintiff reserves his right to amend this Complaint upon discovery of additional instances of LA Times' wrongdoing.

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, Plaintiff Joe Arthur respectfully request the Court to enter Judgment against Defendant LA Times as follows:

A.     Compensatory and Punitive damages in the sum of $25,000,000.00 of the maximum amount allowed by law;

B.     Prejudgment interest on the principal sum awarded by the Jury at the maximum rate allowed by law from August 10, 2021 until Judgment is entered;

C.     Postjudgment interest;

D.      Such other relief as is just and proper.

**TRIAL BY JURY IS DEMANDED**

DATED:          August 10, 2022

                        JOSEPH ARTHUR

                        By:   /s/ Steven S. Biss
                                Steven S. Biss (VSB # 32972)
                                300 West Main Street, Suite 102
                                Charlottesville, Virginia 22903
                                Telephone:  (804) 501-8272
                                Facsimile:  (202) 318-4098
                                Email:  stevenbiss@earthlink.net

                                *Counsel for the Plaintiff*